The document below is hereby signed.

Signed: December 29, 2017



_S. Martin Teel Jr._

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| KIMBERLY P BUDD, | ) | Case No. 16-00429 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| AIHUA PALMOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 16-10039 |
| | ) | |
| KIMBERLY P BUDD, | ) | |
| | ) | **Not for publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter.** |

<u>MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION</u>

The plaintiff has filed a timely *Motion for Reconsideration*
(Dkt. No. 24) ("*Motion*") pursuant to Fed. R. Bankr. P. 9023,
which will be treated as a Fed. R. Civ. P. 59(e) motion to alter
or amend a judgment.  For the reasons that follow, the
plaintiff's *Motion* will be denied.

I

FACTS

The plaintiff's *Motion* seeks reconsideration of the court's judgment in the trial related to this adversary proceeding, held on June 9, 2017. The plaintiff brought two claims in this adversary proceeding, one pursuant to 11 U.S.C. § 523(a)(2) and one pursuant to 11 U.S.C. § 523(a)(6), both requesting that the court declare the debtor's outstanding debt to the plaintiff non-dischargeable.

The debt owed to plaintiff stems from a *Real Estate Investment Agreement* signed by the plaintiff, Aihua Palmour, the debtor, Kimberly Budd, and the debtor's brother, Don Budd, on May 29, 2009. *See Real Estate Investment Agreement*, Ex. 5.[1] Pursuant to that agreement, the plaintiff loaned the debtor and Don Budd $35,000.00 for the purpose of "ACQUISITION and RENOVATION" of a property located at 4009 Clay Place N.E., Washington, D.C. 20019 (the "Property"). *Id.* (emphasis in original). Don Budd, a real estate agent, met the plaintiff in a professional context and afterwards convinced the plaintiff to loan money to him to enable him to purchase and renovate the Property, and then quickly resell the property at a higher price.

---

[1] This exhibit was admitted into evidence as Exhibit 5 at the trial related to this adversary proceeding on June 9, 2017. Citations to exhibits without references to a docket number are citations to exhibits entered into evidence at the trial.

According to the terms of the agreement signed by the plaintiff, the debtor, and Don Budd, the debtor and Don Budd agreed to repay the plaintiff with a return on investment by October 1, 2009, in the total amount of $52,500.00, to be paid in full from the proceeds of the sale of the property. *See id.*

Don Budd, not the debtor, reached the agreement with the plaintiff, maintained contact with the plaintiff, handled the renovation of the Property, and attempted to sell the Property. The debtor was involved solely because Don Budd had no bank account and, according to the debtor's testimony, could not obtain credit without the debtor's assistance.  The plaintiff was aware that the debtor was signing financial documents and receiving payments for her brother because her brother did not have a bank account.  The plaintiff and the debtor agree that they only met each other when the *Real Estate Investment Agreement* was signed and they never interacted after that day. The debtor signed all documents with her brother but was not otherwise involved in securing loans, managing any of the renovation, or attempting to achieve a sale of the Property.  She merely signed her name on documents, received money into her bank account, and distributed it to her brother when he requested it.

Years passed and Don Budd failed to properly renovate the Property, the debtor failed to make the necessary mortgage payments on the Property, and the plaintiff was never repaid.

3

The plaintiff sued the debtor in the District of Columbia Superior Court for breach of contract (*Palmour v. Budd*, Case No. 2012 CA 004186 B) and she received a judgment against the debtor in the amount of $63,788.00. *See Complaint*, Ex. C; *Judgment*, Ex. B.[2]

In the trial of this adversary proceeding on June 9, 2017, the plaintiff sought to have the court declare the $63,788.00 judgment against the debtor non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6). At the conclusion of the trial, in an oral decision, the court denied the plaintiff the relief she sought. *See* Dkt. No. 17. On August 3, 2017, the court issued a written judgment memorializing the ruling at trial and dismissing the adversary proceeding on the merits. *See* Dkt. No. 20. The debtor then filed her timely *Motion for Reconsideration* (Dkt. No. 24), pursuant to Fed. R. Civ. P. 59(e), made applicable to bankruptcy proceedings through Fed. R. Bankr. P. 9023.

---

[2] These exhibits, admitted into evidence at the trial for this adversary proceeding on June 9, 2017, as Exhibits B and C, are respectively the Judgment and Complaint from the breach of contract action brought by the plaintiff against the debtor in the District of Columbia Superior Court.

4

II

LEGAL STANDARD

The court need not grant a Rule 59(e) motion unless there is an intervening change of controlling law, new evidence is available, or there is a need to correct a "clear error or manifest injustice." *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). Moreover, "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994).

III

ALLEGATIONS REGARDING THE SALE OF THE PROPERTY

The plaintiff alleges in her *Motion* that the Defendant testified falsely under oath regarding the disposition of the Property by the debtor and Don Budd. The debtor testified that when the mortgage on the Property went into default, she signed the house over to Rose-Marie Harris, the woman she believed to be the lender, in satisfaction of the outstanding debt. The plaintiff, however, alleges in her *Motion* that the debtor and her brother sold the Property at a profit and pocketed or used the money they earned from the sale.

5

The plaintiff argues: "Based on Plaintiff's claim of no sale the court drew a conclusion that the Defendant did not breach the contract, therefore, 11 U.S.C. § 523(a)(6) did not apply." Dkt. No. 24, at 1-2. However, the court's ruling was not premised on a conclusion that the debtor did not breach the contract. The debtor did breach the contract by failing to repay the plaintiff in accordance with the terms of the *Real Estate Investment Agreement*. The plaintiff in this case received a judgment from the District of Columbia Superior Court against the debtor in the amount of $63,788.00 for breach of contract. *See District of Columbia Superior Court Judgment*, Ex. B; *District of Columbia Superior Court Complaint*, Ex. C. The relevant question in this adversary proceeding is whether the debt remaining from the loan the debtor never repaid is of a character that it ought not be discharged through bankruptcy.

Section 523(a)(6) pertains to debts for willful and malicious injury by the debtor to another entity or to the property of another entity. Section 523(a)(6) generally does not apply to breaches of contract—even intentional ones. Most courts hold that a creditor asserting a claim of nondischargeability pursuant to § 523(a)(6) for a breach of contract by the debtor must additionally allege conduct amounting to an independent tort (for example, conversion). *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill.

2011).  *See also Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578, 589-91 (Bankr. N.D. Ill. 2007), *aff'd*, No. 07 C 4756, 2008 WL 182241 (N.D. Ill. 2008).

The elements of what constitutes an independent tort are determined by non-bankruptcy law.  It is evident from the loan agreement signed by the plaintiff, the debtor, and the debtor's brother that the plaintiff was to be repaid $52,500.00 "on or before October 1, 2009, from the proceeds of the sale of the subject property. . . ."  *See Real Estate Investment Agreement*, Ex. 5.[3]  The plaintiff cannot try to advance her § 523(a)(6) claim on the basis that the debtor's breach of contract was also the independent tort of conversion based on her entitlement to repayment from the proceeds of the sale of the Property.  If the plaintiff had held an equity interest in the Property then the plaintiff could have argued that the debt should be deemed nondischargeable because the debtor sold the property, realized equity in the sale, and willfully and maliciously failed to repay the loan made by the plaintiff from the proceeds of the sale.  However, the plaintiff cannot advance a theory of conversion because she did not hold an equity interest as a lien on the Property; no lien was created via a deed of trust.  See *IBA, Inc. v. Hoyt (In re Hoyt)*, 326 B.R. 13, 20 (Bankr. W.D.N.Y. 2005)

---

[3]  The *Real Estate Investment Agreement* was admitted into evidence as Exhibit 5 at the trial for this adversary proceeding that took place on June 9, 2017.

7

(holding that because "IBA retained no security interest or other
ownership interest in the dairy supplies sold to Dairy and/or
Hoyt, it cannot prevail on an alleged willful and malicious cause
of action for conversion"). The plaintiff has not advanced any
other theory of an independent tort committed by the debtor that
would support her § 523(a)(6) claim for non-dischargeability.

Moreover, the plaintiff's allegation that the debtor lied
under oath and the Deed the plaintiff attached to her *Motion* do
not justify this court reconsidering its decision. There was no
clear error in the court's ruling based on the evidence presented
at trial. The plaintiff could have cross examined the defendant
at trial to challenge the debtor's account of the disposition of
the Property and could have admitted the Deed into evidence and
requested the defendant to explain whether she or her brother
received any proceeds of the sale and, if so, how much they
received and what happened to those proceeds. The plaintiff
failed to do so and she may not now use a Rule 59 motion to
attempt to get a second bite at the apple.

Additionally, the Deed does not constitute new evidence not
previously available that justifies reconsideration of the ruling
at trial. "When the motion for a new trial is based on a claim
of newly discovered evidence, the movant is required to rebut the
presumption that there has been a lack of diligence." *Bedell v.
Inver Housing, Inc.*, 506 A.2d 202, 207 (D.C. 1986) (internal

8

quotation marks and citation omitted).  *See also Johnson v.
Hobson*, 505 A.2d 1313, 1320 n.10 (D.C. 1986) (quoting *United
States v. Bransen*, 142 F.2d 232, 235 (9th Cir. 1944)).  The
plaintiff has not rebutted the presumption that the Deed was
available prior to trial and the plaintiff nevertheless failed to
introduce it at trial and admit it into evidence.

Furthermore, the Deed does not alone conclusively contravene
the debtor's testimony, the evidence or demonstrate any manifest
injustice of the court's ruling.

According to the debtor's testimony at trial, she and her
brother received two loans with which they intended to purchase
and renovate the property: one from Aihua Palmour and the other
from Rose-Marie Harris.  Rose-Marie Harris worked with Don Budd
at Long and Foster.  The debtor went to Long and Foster to sign
the mortgage agreement and she signed the papers as directed by
her brother.  She understood that the loan from Rose-Marie Harris
was secured by the Property and that she was expected to pay
$665.00 per month towards the mortgage.  No evidence was
presented in regards to the terms of the loan made by Rose-Marie
Harris.  However, the settlement statement for the sale of the
Property, marked as Exhibit H, was admitted into evidence at the
trial.  That document listed Kimberly Budd, the debtor, as the
borrower and listed Rose-Marie Harris as the lender.  *See* Ex. H.
It is unclear exactly how much money was loaned to the debtor but

the total amount paid by or for the debtor at the closing of the sale was $102,156.66.  *Id.*

The debtor testified that she did not speak with Rose-Marie Harris after signing the mortgage agreement until, after having made no payments on the mortgage for a long time, the mortgage went into default and she met with Rose-Marie Harris to sign the house over to her in satisfaction of the outstanding mortgage. In her *Motion*, the plaintiff claims that the defendant lied at trial and actually sold the property to MBI and Associates, LLC, for $115,000.00 on April 23, 2012, as evidenced by copy of a Deed attached to the plaintiff's motion as Exhibit A.  The Deed was executed by Kimberly Budd in favor of MBI and Associates, LLC, in exchange for consideration of $115,000.00.

The settlement statement evidencing the sale of the Property to Kimberly Budd on August 20, 2009, notes that Rose-Marie Harris loaned the debtor money to purchase the Property.  *See* Ex. H. The debtor testified that Rose-Marie Harris loaned her about $100,000.00 for the purchase of the property, which is supported by the settlement statement.  The debtor testified that she understood that the mortgage loan by Rose-Marie Harris was secured by the Property and that she was expected to make monthly payments of $665.00 to Ms. Harris, but she failed to make any monthly payments on the mortgage.  Thus, the property went into default and she met with Ms. Harris and signed the Property over

10

to her.   The Deed attached to the plaintiff's *Motion* demonstrates
that Kimberly Budd signed the Deed over not to Ms. Harris but to
MBI and Associates, LLC, for consideration of $115,000.00.

This does not demonstrate that Kimberly Budd received any of
the $115,000.00.   The debtor, according to her testimony, signed
that Deed at the office of Ms. Harris.   Ms. Harris had loaned
$100,000.00 to the debtor in August 2009 to enable the debtor to
purchase the Property and the debtor, according to her
uncontroverted testimony, never made any payments on that loan.
The debtor has not scheduled any outstanding loan to Ms. Harris
in her bankruptcy schedules and Ms. Harris has not filed a claim
in the debtor's bankruptcy case.   It therefore appears that the
debtor transferred the Deed to MBI and Associates, Inc. and Ms.
Harris collected the $115,000.00 in satisfaction of the
outstanding loan.   Ms. Harris would have received this amount in
April 2012, almost three years after lending the debtor
$100,000.00.   While we have no evidence of the terms of the loan,
it can be presumed that there was interest owed to Ms. Harris on
the prinicpal loan amount.   The plaintiff has not demonstrated
any basis for alleging that the debtor received any money from
the sale of the Property in 2012 and it is the plaintiff who had
the burden of proof at trial.   For these reasons, the court
declines to reconsider its judgment based on the plaintiff's

allegation that the debtor lied at trial regarding the
disposition of the Property.

IV

DEBTOR'S FINANCIAL ACUMEN AND INTENT

Another argument for reconsideration raised by the plaintiff
in her *Motion* is that, contrary to the findings of the court at
trial, the debtor was sufficiently aware of the consequences of
signing the loan documents related to the purchase,
rehabilitation, and sale of the Property and was fully aware of
and actively complicit in her brother's alleged
misrepresentations to the debtor and other misdeeds related to
the purchase, rehabilitation, and sale of the Property.

In her *Complaint*, the plaintiff brought two claims: (1) Non-
dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2),
and (2) Non-dischargeability of the debt pursuant to 11 U.S.C.
§ 523(a)(6).  For reasons previously addressed, the plaintiff's
motion for reconsideration of the ruling in regards to the
§ 523(a)(6) will be denied.  As for the plaintiff's claim
pursuant to § 523(a)(2), that section relates to non-
dischargeability of the debt based on the manner in which the
debtor obtained the loan.  The only applicable portion of that
section in this case appears as § 523(a)(2)(A): non-
dischargeability of a debt for money obtained by "false
pretenses, a false representation, or actual fraud. . . ."

12

The plaintiff did not demonstrate at trial and has not demonstrated in her *Motion* that the debtor personally obtained the money from the plaintiff by way of false pretenses, a false representation, or actual fraud.  The debtor signed documents to enable her brother's endeavor to earn a profit by purchasing, renovating, and selling the property.  The debtor left the entire endeavor in her brother's hands and hoped that her brother would achieve success.  She believed that her brother was going to renovate the Property and resell it and pay back the loans they received in order to purchase the Property.  The debtor had no contact with the plaintiff before or after the signing of the loan agreement and, by the account of both parties, did not say anything to coax the plaintiff into entering into the loan agreement.  There is also no evidence that demonstrates that the debtor knew she and her brother were not going to repay the plaintiff or that she personally had any intention of borrowing the money from the plaintiff and never paying it back.  Thus, the plaintiff's motion for reconsideration based on the debtor's true intent, the debtor's understanding of the financial agreements she signed, and the debtor's knowledge of her brother's alleged bad intentions will be denied.

V

PARTNERSHIP LIABILITY

The plaintiff also argues in her *Motion* that the debtor should be held responsible for her brother's actions on a theory of partnership liability.  The plaintiff's arguments regarding the debtor's knowledge of and involvement in the activities of her brother, like the plaintiff's arguments regarding the disposition of the Property, should have been raised at trial through cross examination or the introduction of evidence conflicting with the debtor's testimony.  The plaintiff failed to raise a partnership theory of liability and hardly presented any evidence at trial relevant to such a theory, let alone proved it. The debtor cites no change of controlling law since the trial date, no new evidence not available at trial that merits reconsideration of the court's ruling, and no clear error or manifest injustice in the court's judgment.  Thus, as elaborated in more depth in Part A, below, the debtor cannot now use a Rule 59(e) motion to assert a partnership theory of imputed liability.

Moreover, even if the plaintiff had properly raised the issue of whether Don Budd's actions could be imputed to the debtor for purposes of § 523(a)(2)(A) non-dischargeability in her complaint and at trial, the circumstances of the case weigh against imputation of liability, as explained in more depth in Part B, below.  Moreover, Don Budd did not testify at trial and

14

there is insufficient evidence that Don Budd acted fraudulently
or utilized false representations or false pretenses in order to
obtain the loan from the plaintiff.  Therefore, there is no
proven misdeed by Don Budd that falls within the confines of
§ 523(a)(2)(A) that could be imputed to the debtor in order to
justify denying the debtor a discharge of the debt to the
plaintiff pursuant to that section.

A

THEORY CANNOT BE RAISED NOW AS RULE 59(e) MOTION

The plaintiff argues in her *Motion* that Don Budd's actions
should be imputed to the debtor on a theory of partnership
liability and thus, based on Don Budd's alleged deceptions, the
debt to the plaintiff should be deemed non-dischargeable.
However, the plaintiff did not adequately raise this argument in
her pleadings and pretrial statement or at the trial.  In her
*Complaint*, the debtor never claimed that a partnership existed
between the Budds, though her allegations were phrased as actions
taken and misrepresentations made by both of the Budds.  *See* Dkt.
No. 1.  The closest thing to an allegation regarding existence of
a partnership is the allegation in the plaintiff's *Pretrial
Statement* that "Defendant (either on her own or in conjunction
with her business associate(s)) encouraged Plaintiff to
contribute money to the business venture, in part, because of
Defendant's expertise."  Dkt. No. 14, at 3.

15

However, the plaintiff offered no evidence at trial that she entered into the *Real Estate Investment Agreement* based on the representation that the debtor was involved in a partnership with her brother and based on her understanding of any alleged expertise of the debtor.  To the contrary, the plaintiff herself emphasized in her testimony that she entered into the *Real Estate Investment Agreement* because she respected and trusted Don Budd, the debtor's brother, because he was a real estate agent and seemed to be knowledgeable and skilled in the process of buying, renovating, and reselling homes.  The plaintiff was aware that the debtor was involved in signing the loan agreements and receiving payments because Don Budd did not have his own bank account.

At trial, the plaintiff's attorney asked the debtor whether she and her brother were engaged in a partnership and the debtor denied the existence of a partnership.  The debtor contemplated that she may have received some of the sales proceeds from her brother if he had made money from the sale of the property but she had no agreement with her brother to receive any proceeds of the sale.  There was no other testimony or evidence presented related to the existence of a partnership between Don Budd and the debtor and, in her opening statement and closing argument, the plaintiff's attorney did not argue that a partnership existed

and that Don Budd's actions should be imputed to the debtor in
light of her involvement in the partnership.

A Fed. R. Civ. P. 59(e) motion for reconsideration, brought
in bankruptcy cases pursuant to Fed. R. Bankr. P. 9023, exists to
allow a party to present newly-discovered evidence to the court
or to correct a manifest error of law or fact in the court's
judgment. *See, e.g., Harsco Corp. v. Zlotnicki*, 779 F.2d 906,
909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986); *Reich v.
Compton*, 834 F.Supp. 753, 755 (E.D.Pa. 1995), *aff'd in part &
rev'd in part*, 57 F.3d 270 (3d Cir. 1995); *Public Citizen, Inc.
v. Resolution Trust Corp.*, No. Civ. A. 92-0010, 1993 WL 1617868,
at *6 (D.D.C. March 19, 1993). A motion for reconsideration is
not the appropriate vehicle for reasserting arguments or raising
additional arguments that the movant could have made but failed
to make at trial. *See Reich*, 834 F.Supp. At 755 (quoting *Dodge
v. Susquehanna Univ.*, 796 F.Supp. 829, 830 (M.D.Pa.1992)); *Public
Citizen, Inc. v. Resolution Trust Corp.*, 1993 WL 1617868, at *6.
In her *Motion*, the debtor has described no newly-discovered
evidence related to her theory of partnership liability and has
not demonstrated that the court erred in its findings of fact or
conclusions of law. Rather, the plaintiff is seeking to raise
for the court's review a theory of liability she failed to plead
and failed to adequately pursue or present at trial before the
court issued its decision. The plaintiff cannot pursue

17

reconsideration for this purpose.  Thus, the plaintiff's
arguments in her *Motion* regarding imputation of Don Budd's
liability to the debtor will be rejected.

B

IMPUTING LIABILITY WOULD BE INAPPROPRIATE HERE

Even if the debtor had adequately raised her partnership
theory of imputing liability to the debtor prior to the judgment,
the evidence demonstrates that no partnership existed, there is
no basis for finding a partnership by estoppel, and no conduct of
Don Budd could have properly been imputed to the debtor.

1. Imputing Liability on a Partnership Theory - § 523(a)(6)

Misconduct cannot be imputed for purposes of non-
dischargeability of a debt under 11 U.S.C. § 523(a)(6).  *See
Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727, 732 (Bankr. D.D.C.
1998) ("The phrase 'by the debtor' [in 11 U.S.C. § 523(a)(6)]
follows the phrase 'for willful and malicious injury.' Thus, the
plain meaning test requires that the debtor must have been the
one who caused the willful and malicious injury.  Imputed
liability is insufficient.") (quotation marks and citation
omitted); *Deroche v. Miller (In re Miller)*, 196 B.R. 334, 336
(Bankr. E.D. La. 1996) ("In Section 523(a)(6), the phrase 'by the
debtor' follows the phrase 'for willful and malicious injury.'
Thus, the plain meaning test requires that the debtor must have
been the one who caused the willful and malicious injury.

18

Imputed liability is insufficient."), *cited in Caci v. Brink (In re Brink)*, 333 B.R. 560, 568 (Bankr. D.Mass. 2005); *First New Mexico Bank v. Bruton (In re Bruton)*, No. 09-1187 J, 2010 WL 2737201, at *8 (Bankr. D.N.M. July 12, 2010) (noting that courts "uniformly reject vicarious or imputed liability" under § 523(a)(6) and because of the language "by the debtor" in that section, "§ 523(a)(6) cannot, as a matter of law, be based on imputed or vicarious liability of the debtor for acts committed by someone else"). Thus, the debtor cannot resurrect her § 523(a)(6) non-dischargeability claim on the basis of partnership liability.

2. Imputing Liability on a Partnership Theory - § 523(a)(2)

Misconduct can be imputed to a partner for purposes of non-dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) even if the partner did not participate in the misconduct, had no knowledge of it, and had no reason to have knowledge of it. *See Strang v. Bradner*, 114 U.S. 555, 561 (1885) (imputing fraud of a partner to debtors in bankruptcy to deny the debtors a discharge of a particular debt arising from a loan obtained by the partnership on the basis of the partner's fraudulent misrepresentations); *Calhoun v. FDIC (In re Calhoun)*, 131 B.R. 757 (Bankr. D.D.C. 1991) ("The courts have split on this issue, but the better rule is that a partner's fraud can be imputed to a debtor [for purposes of § 523(a)(2)(A) non-dischargeability]

19

regardless of the debtor's actions or knowledge."). As the

Supreme Court stated in *Strang v. Bradner*, 114 U.S. at 561:

> [I]f, in the conduct of partnership business, and with
> reference thereto, one partner makes false or fraudulent
> misrepresentations of fact to the injury of innocent
> persons who deal with him as representing the firm, and
> without notice of any limitations upon his general
> authority, his partners cannot escape pecuniary
> responsibility therefore upon the ground that such
> misrepresentations were made without their knowledge.
> This is especially so when, as in the case before us, the
> partners, who were not themselves guilty of wrong,
> received and appropriated the fruits of the fraudulent
> conduct of their associate in business.

Imputing misconduct of Don Budd to the debtor, Kimberly

Budd, is improper here where the plaintiff has not demonstrated

that any partnership existed between the Budds. While the

plaintiff cites to D.C. Code § 29-704.04 in her *Motion* to support

her general partnership theory, that section pertains to a

general partner's liability in a limited partnership. Pursuant

to D.C. Code § 29-702.01, a limited partnership can only be

formed via the filing of a certificate of limited partnership,

which no party has alleged exists or introduced in this case at

any time. The plaintiff likely intended to argue that the debtor

and her brother should be deemed to have acted in a general

partnership and on that basis the debtor should be liable for her

brother's actions. Pursuant to D.C. Code § 29-603.08(a)

(emphasis added):

> If a person, by words or conduct, purports to be a
> partner, or consents to being represented by another as
> a partner, in a partnership or with one or more persons

20

not partners, the purported partner shall be liable to a
person to whom the representation is made, if that
person, *relying on the representation*, enters into a
transaction with the actual or purported partnership.

*See also* Grewal v. Cuneo, 2015 WL 4103660, at *6 (S.D.N.Y. July
7, 2015) ("[A]n injured party asserting partnership by estoppel
must, in addition to showing that the other party was actually
represented as a partner, demonstrate that they relied on such
representations.")  This seems to be the theory to which the
plaintiff may have vaguely alluded in her *Pretrial Statement*.
*See*  Dkt. No. 14, at 3 ("Defendant (either on her own or in
conjunction with her business associate(s)) encouraged Plaintiff
to contribute money to the business venture, in part, because of
Defendant's expertise.").

However, this theory cannot hold for two reasons: (1) the
debtor did not produce evidence at trial that Don Budd
represented that his sister was a partner of his in the endeavor
to renovate and resell the Property, that the debtor consented to
such representation if one was made, or that the debtor herself
held herself out as a partner of her brother by word or conduct;
and (2) the plaintiff's own testimony demonstrates that she did
not enter the agreement in reliance on a representation that the
debtor's sister was involved in the project.

First, the plaintiff presented no evidence that demonstrates
that, at the time the plaintiff entered into the *Real Estate
Investment Agreement*, she believed that the debtor was a partner

21

in the project.  In her *Motion*, the plaintiff cites to
representations made by the debtor's brother via e-mail that
could be construed as representing a partnership between him and
the debtor.  She attached the e-mails to her *Motion* (Dkt. No. 24)
as Exhibit C.  The debtor cannot now argue that she relied on
those representations and entered the *Real Estate Investment
Agreement* because of those representations when she had access to
those e-mails and knew about the representations prior to the
court issuing its judgment and failed to produce such evidence
and make such arguments to the court.  A motion for
reconsideration is not a vehicle available to the plaintiff for
offering evidence that she had access to prior to the court's
judgment but failed to introduce at trial.

Even if she had introduced such representations of Don Budd
at trial, the plaintiff would have still needed to demonstrate
that the debtor consented to her brother making such
representations in order for the court to find that there was a
partnership by estoppel.  The debtor testified that she was not
involved in and had no knowledge of her brother's communications
with the Plaintiff.  The court finds that testimony credible.
Additionally, neither the plaintiff nor the debtor testified at
trial that the debtor personally represented by her words or
conduct that she and her brother were partners in the project to
renovate and resell the Property.

22

Second, the plaintiff offered no evidence at trial that she
entered into the *Real Estate Investment Agreement* in reliance on
the representation that the debtor was involved in a partnership
with her brother and based on her understanding of any alleged
expertise of the debtor.  The plaintiff only testified that she
entered into the agreement because of her trust in Don Budd's
expertise.  The plaintiff was aware at the time that she offered
the loan that the debtor was only involved to sign documents and
receive the loans because her brother lacked a bank account.
According to the testimony of both the plaintiff and the debtor,
the plaintiff only ever had contact with the debtor when they and
Don Budd signed the *Real Estate Investment Agreement*.  At all
other times, the plaintiff only communicated with Don Budd and
only assumed Don Budd was handling the project.  The debtor
denied any knowledge of or involvement in her brother's plans or
his attempts to secure loans and she represented that she had no
hand in the agreement or in the project to renovate and resell
the Property aside from signing financial documents, accepting
payments, and providing money to her brother, all of which she
did at her brother's instruction.

The debtor signed all of the financial documents for her
brother without any knowledge of her brother's plans of how he
would use the money, rehabilitate the property, sell the
property, and repay the loans.  She did not read any of the

23

documents at great length and did not pay attention to the
details of the loan agreements.  She simply acted as an
intermediary for her brother, allowing him to obtain financing he
would not have been able to obtain on his own.  The plaintiff
provided no evidence at trial to contradict this testimony and
the court finds that testimony credible.  The plaintiff's
testimony at trial also does not indicate that the plaintiff
believed the debtor to be involved in the project in any greater
capacity.  Thus, on these two bases, as a matter of law the court
could not have found that a partnership by estoppel (which would
be required for imputation of any fraud by Don Budd to the
debtor) existed.

Furthermore, it would be inappropriate here to impute Don
Budd's fraud to the debtor because the debtor did not
contractually have a right to benefit from her brother's endeavor
to renovate and resell the Property, nor did she actually benefit
from that endeavor.  *See Strang*, 114 U.S. at 561; *Calhoun*, 131
B.R. at 760 (citing *Stockwell v. United States*, 80 U.S. (13
Wall.) 531, 547-48 (1871)) ("This is especially true where a
debtor has benefit[t]ed from the fruit of the fraudulent
acts. . . .").  The plaintiff did not allege that the debtor had
an agreement with her brother wherein she was to receive profits
from the real estate venture and the plaintiff did not prove at
trial that any such agreement existed.  At trial, the plaintiff

24

only asked one question about the debtor's expected profit from
the venture and the debtor testified that she had no agreement
with her brother to receive any profits but that it was possible
that her brother would have given her some money if he had earned
some kind of profit from the venture.  Based on the evidence
presented at trial, the court determined that there was no
written or oral agreement pursuant to which the debtor was
entitled to receive proceeds of the sale of the Property and that
the debtor in fact received no proceeds of the sale of the
Property.  Even if the debtor could now in her motion for
reconsideration raise the argument of imputation of liability on
a partnership theory, there was insufficient evidence presented a
at trial that would justify doing so and the plaintiff has not,
in her *Motion*, introduced new evidence unavailable prior to the
court's judgment or emphasized any error in fact or law that
would justify the court's reconsideration of that issue.

VI

PLAINTIFF'S REQUEST TO SUBPOENA DEBTOR'S BANK RECORDS

The plaintiff indicated in her *Motion* that she believes that
she can demonstrate that the debtor misappropriated the funds
lent by the plaintiff by obtaining, by way of a subpoena, records
of the debtor's personal bank account.  The plaintiff cannot
utilize a motion for reconsideration to conduct research to
support her arguments which she could have done as part of her

pre-trial discovery.  Thus, the debtor's motion for
reconsideration on the basis of her desire and intent to subpoena
and investigate records for the debtor's personal bank account
will be denied.

VII

ORDER

It is thus

ORDERED that the debtor's *Motion for Reconsideration* (Dkt.
No. 24) is DENIED.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification of orders.